IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOHN RODRIGUEZ, et al.,   :    Civil Action
                  :    No. 08-2059
    Plaintiffs,    :
                  :
    v.             :
                  :
NATIONAL CITY BANK, et al.,  :
                  :
    Defendants.    :


C O R R E C T E D   M E M O R A N D U M[1]

EDUARDO C. ROBRENO, J.                OCTOBER 21, 2011


I.    **INTRODUCTION**

On May 1, 2008, Plaintiffs John Rodriguez, Jennifer Worthington, Bobby Crouther, Jesus Conchas and Rosa Maria Conchas ("Plaintiffs") filed a complaint, alleging that Defendants National City Bank and National City Corporation ("Defendants") have demonstrated an established pattern and practice of racial discrimination in the financing of residential home purchases, in violation of the Fair Housing Act, 42 U.S.C. § 3601 ("FHA") and

---

[1]    The only correction in this Memorandum with respect to the Court's original Memorandum (doc. no. 104) is the substitution of the word "prescribed" for the word "proscribed" in two locations, on pages 12 and 18, in the original Memorandum.

the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA").
Specifically, Plaintiffs allege that Defendants' "Discretionary
Pricing Policy" authorizes a subjective surcharge of additional
points, fees, and credit costs to an otherwise objective risk-
based financing rate, the application of which has a widespread
discriminatory disparate impact on minority applicants for home
mortgage loans.  (Compl. ¶¶ 1,3.)

        Plaintiffs now bring a Motion for Final Approval of
Settlement and Certification of Settlement Class, as well as a
Motion for Attorneys Fees.  For the reasons set forth below, the
Court will deny both motions.


I.    BACKGROUND

        On May 1, 2008, Plaintiffs filed their complaint.
Defendants denied all claims and asserted numerous defenses to
both liability and class certification.  On June 23, 2008, the
Defendants filed an initial Motion to Dismiss.  On September 5,
2008, Plaintiffs filed their Amended Complaint.  Defendants
responded by filing a Motion to Dismiss Plaintiff's Amended
Complaint on September 22, 2008.  After briefing and oral
argument, by Order dated December 11, 2008, the Court denied
Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.
        On March 31, 2009, Plaintiffs filed a Second Amended
Complaint, the operative Complaint, which added two additional

Plaintiffs, Luis and JoAnn Ramos, as well as The PNC Financial Services Group as a successor-in-interest to the National City Defendants.  Defendants answered the Complaint on April 20, 2009, and simultaneously moved to dismiss all claims in this case relating to mortgage loans originated by First Franklin Corp. (a former subsidiary of National City), as such claims are the subject of separate consolidated actions pending in the United States District Court for the Northern District of California entitled In re First Franklin Corp., No. 08-CV-1515.  On May 7, 2009, pursuant to a stipulation by the parties, the Court struck paragraph 83 of the Complaint and dismissed all claims relating to mortgage loans originated by First Franklin.  Thereafter, the parties engaged in discovery.

Defendants produced documentation of pricing policies and procedures, including rate sheets provided to brokers and loan officers throughout the United States.  Defendants also provided proprietary data submitted by National City to the federal government under the Home Mortgage Disclosure Act ("HMDA").  The loan data produced by Defendants, for each of more than two million loans originated from 2001 to 2008, included the annual percentage rate ("APR"), the term of the loan, the rate spread, the interest rate for the loan, the borrower's income, the borrower's ethnicity and race, the borrower's credit score, the borrower's debt-to-income ratio, the loan-to-value ratio, the

prepayment terms, the origination fee for wholesale loans, the amortization type (e.g. fixed, ARM or adjustable rate mortgage, or interest only with balloon), the annual interest rate cap for ARM loans, and other ARM data.  The two million loans included all of the loans originated by Defendants to Caucasian, Hispanic and African American borrowers, of which about 15% were to borrowers identified as African American or Hispanic.

While discovery was proceeding, on December 14, 2009, the parties met to explore the possibility of a negotiated settlement.  Thereafter, in an effort to facilitate settlement, the parties retained an experienced class action mediator, Jonathan Marks ("Marks"), to assist their efforts.  The parties held several telephone conversations with Marks and exchanged lengthy mediation briefs and reply briefs with regard to both the legal and factual issues in the case.  Plaintiffs provided Defendants with their expert's preliminary regression analysis in support of their claims, and Defendants responded with criticisms of the analysis based upon their experts' analysis.  The parties participated in an in-person mediation from May 12-13, 2010. With Plaintiffs' and Defendants' experts present and after a two-day mediation, the parties arrived at a proposed settlement on behalf of the class that would resolve all issues.

Accordingly, Plaintiffs filed a Motion for Preliminary Approval of Settlement on July 15, 2010 that the Court granted on

July 22, 2010.  On December 9, 2010, Plaintiffs filed a Motion
for Final Approval of Settlement and Certification of Settlement
Class, as well as a Motion for Attorneys Fees.  Thus, the Court
held a Fairness Hearing on December 16, 2010.  At this hearing,
the parties did not offer any evidence, other than what was in
the record, and did not proffer any witnesses.  The parties
relied on the arguments set forth in their papers.

The Court had some concern regarding the settlement
agreement and on January 4, 2011, the Court ordered that the
parties may provide additional briefing addressing the following:
(1) the differences and similarities between Defendant's
Foreclosure Avoidance Programs and the loss mitigation and/or
foreclosure avoidance counseling that will be provided by the
National Council of La Raza and Neighborhood Housing Services of
Chicago; (2) the differences and similarities between the
services provided by the National Council of La Raza and
Neighborhood Housing Services of Chicago; (3) a description of
how the National Council of La Raza and Neighborhood Housing
Services of Chicago were selected, addressing: any connections
between counsel and the organizations, whether or not the
organizations provide referrals for counsel, and why two
organizations were selected instead of one; (4) a description of
how the $75,000 amount to be given to both National Council of La
Raza and Neighborhood Housing Services of Chicago was determined,

including an estimation of services and costs; and (5) a description of the work performed and the involvement of the representative plaintiffs.  On February 18, 2011, both parties filed supplemental briefing on these issues.

While the Court was considering the supplemental briefing, the United States Supreme Court issued its opinion in Wal-Mart Stores, Inc. v. Dukes, a case that the parties had recognized in their briefing as being highly relevant to this case.  131 S. Ct. 2541 (2011).  In light of the opinion's implication on class certification in this case, on July 5, 2011, the Court gave the parties the opportunity to file supplemental briefing as to: (1) whether Wal-Mart Stores, Inc. v. Dukes is relevant to class certification in this case; and if so (2) the legal analysis of the implications of the Wal-Mart Stores, Inc. v. Dukes opinion to this case.  On July 22, 2011, both parties filed supplemental briefing on this issue.

Plaintiffs' Motion for Final Approval of Settlement and Certification of Settlement Class and Motion for Attorney Fees are currently before the Court.[2]

## III. DISCUSSION

Plaintiffs' move for final approval of the class action

---

[2]     As Plaintiffs' motions are raised within the context of settlement, Defendants do not oppose, and in fact offer briefing in support of, Plaintiffs' motions.

settlement.  "The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The purpose of this rule is "to protect the unnamed members of the class from unjust or unfair settlements."  Nicole Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010).  However, "[T]he ultimate inquiry into the fairness of the settlement under Fed. R. Civ. P. 23(e) does not relieve the court of its responsibility to evaluate Rule 23(a) and (b) considerations."  In re Community Bank of N. Va., 418 F.3d 277, 299 (3d Cir. 2005); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 622 (1997).  Thus, before a class action suit that would bind class members is settled, the Court must conduct a hearing to determine (1) that certification of the proposed class is appropriate and (2) that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).

A.  Class Certification

Before turning to the fairness of the proposed settlement, the Court must determine that certification of the proposed settlement class is appropriate under Rules 23(a) and (b).[3]  To do so, Plaintiffs must satisfy all of the requirements

---

[3]    Of course, the inquiry under Rule 23(a) and (b) is not exactly the same where the parties intend to settle as it would be if the case was planned for trial.  Amchem, 521 U.S. at 620. Indeed, when evaluating whether to finally certify a class for settlement, the court should not consider matters in Rule 23 that do not apply if the case is to settle.  Id.

of Federal Rule of Civil Procedure 23(a) and the requirements of
one of the subsections of Rule 23(b).  Wal-Mart Stores, Inc. v.
Dukes, 131 S. Ct. 2541, 2548 (2011); In re Prudential Ins. Co.
Am. Sales Practice Litig., 148 F.3d 283, 309 (3d Cir. 1998).

The Settlement encompasses a proposed nationwide
opt-out class consisting of the following:

> All African-American and Hispanic persons who obtained
> a Mortgage Loan from (a) NCB or NCC or any of its or
> their present and former parents, subsidiaries (other
> than First Franklin) divisions (including, without
> limitation, NCMC) or affiliates from January 1, 2004 to
> the date the Court enters the Preliminary Approval
> Order and (b) from PNC or any of its present and former
> parents, subsidiaries or divisions through a former NCB
> or NCC entity, affiliate or operating division
> (including, without limitation, NCMC) from November 6,
> 2009 to the date the Court enters the Preliminary
> Approval Order. (July 21, 2010)

Of this group, 24,419 class members have submitted
timely claim forms with the settlement administrator while just
66 have opted out of the Settlement.  In addition, 212 late
claims have been received.

"Rule 23 does not set forth a mere pleading standard,"
but instead "a party seeking class certification must

---

However, the determination of whether the class meets
Rule 23's criteria is a rigorous one because it is the role of
the Court to protect unnamed plaintiffs' possible claims from
being included in an overly broad class.  Dukes, 131 S. Ct. at
2550 ("Rule 23(a) ensures that the named plaintiffs are
appropriate representatives of the class whose claims they wish
to litigate.  The Rule's four requirements -- numerosity,
commonality, typicality, and adequate representation --
effectively limit the class claims to those fairly encompassed by
the named plaintiff's claims."(internal quotations and citations
omitted)).

affirmatively demonstrate [her] compliance with the Rule -- that
is, [she] must be prepared to prove that there are in fact
sufficiently numerous parties, common questions of law or fact,
etc." <u>Dukes</u>, 131 S. Ct. at 2551-52.  The Supreme Court has
repeatedly "recognized . . . that 'sometimes it may be necessary
for the court to probe behind the pleadings before coming to rest
on the certification question,' and that certification is proper
only if 'the trial court is satisfied, after a rigorous analysis,
that the prerequisites of Rule 23(a) have been satisfied.'" <u>Id.</u>
at 2551-52 (quoting <u>General Telephone Co. of Southwest v. Falcon</u>,
457 U.S. 147, 160-61 (1982).  Indeed, even before <u>Dukes</u>, the
Third Circuit recognized that in keeping with Rule 23(e)'s policy
to protect unnamed class members, the Supreme Court has
instructed that the court should be particularly vigilant in
determining whether to certify a class for settlement with
respect to those class certification rules in Rule 23(a) and (b)
that are "designed to protect absentees by blocking unwarranted
or overbroad class definitions." <u>Prudential</u>, 148 F.3d at 309.

     The Supreme Court has also recognized that
"[f]requently, th[is] 'rigorous analysis' will entail some
overlap with the merits of the plaintiff's underlying claim. That
cannot be helped.'" <u>Dukes</u>, 131 S. Ct. at 2551-52 (quoting
<u>Falcon</u>, 457 U.S. at 160).  That is, that "'class determination
generally involves considerations that are enmeshed in the

factual and legal issues comprising the plaintiff's cause of action.'" <u>Dukes</u>, 131 S. Ct. at 2551-52 (quoting <u>Falcon</u>, 457 U.S. at 160).

It is with this guidance, that the Court evaluates whether the proposed class in this case meets the requirements under Rule 23(a) and (b) to establish a class and finds that Plaintiffs do not.

### B.   Rule 23(a)'s requirements

Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation in order to certify a class. <u>See</u> Fed. R. Civ. P. 23(a).[4] Here, while this proposed settlement class satisfies the requirements of numerosity and adequacy of representation, under the Supreme Court's recent precedent in <u>Wal-Mart Stores v. Dukes</u>, the class

---

[4]   Rule 23(a) provides that a class action may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

- 10 -

fails to establish the requirement of commonality and typicality.

        1.   <u>The Settlement Class Meets the Requirements of Numerosity and Adequacy of Representation</u>

To numerosity, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable" is satisfied because the proposed settlement class encompasses over 153,000 individuals which well exceeds amounts previously found to be numerous by the Third Circuit.  <u>See</u> <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001)(finding that the numerosity requirement will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40."); <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 294-95 (3d Cir. 2006) (class of 776); <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 785-86 (3d Cir. 1985) (class of 90).

To adequacy of representation, Plaintiffs are adequate representatives of the class under Rule 23(a) because (1) Plaintiff has retained experienced counsel; and (2) Plaintiff's interests are aligned with those of the unnamed class members. <u>Community Bank</u>, 418 F.3d at 303.  The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the

absentees', and it tests the qualifications of the counsel to represent the class.'" Id. (quoting General Motors Corp., 55 F.3d at 800)).[5]  Here, the named Plaintiffs' interest are aligned with the class' as both want to prove that the Defendants' discretionary lending practices had a discriminatory disparate impact for African American and Hispanic borrowers.  Indeed, class members are free to pursue any individual claims they may have (and that they raised in objections) that are not related to this claim.  Also, class counsel has an extensive resume and history for representing plaintiffs and their associated classes in large scale class action lawsuits such as this.  Thus, the final requirement is met.

>          2.   However, the Class Fails to Meet the
>               Commonality and Typicality Requirements as
>               Prescribed by the Supreme Court in Wal-Mart

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'"  Dukes, 131 S. Ct. at 2550-51 (quoting Fed. R. Civ. P. 23(a)(2)).  Before Dukes, courts have believed that "the commonality standard of Rule 23(a)(2) is not a high bar."  Chiang v. Veneman, 385 F.3d

---

[5]     The adequacy of counsel, for the Rule 23(a) requirements, is analyzed under Rule 23(g).  Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010).  The preliminary approval order made Barroway Topaz lead counsel, together with the other Plaintiffs' law firms as class counsel. These firms easily meet the requirements of 23(g) as evidenced in their exhibits, the extensive discovery process, and their extensive efforts in pursuing the case.

256, 265 (3d Cir. 2004)(finding "the commonality standard of Rule 23(a)(2) is not a high bar; it does not require identical claims or facts among class members, as 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class,'"); <u>see</u> <u>also</u> <u>Stewart</u>, 275 F.3d at 227 (finding that the commonality requirement is satisfied if "at least one question of fact or law is common to each member of this prospective class").

However, the Supreme Court, in <u>Dukes</u>, has clarified this standard:

> Th[e] language [of Rule 23(a)'s commonality requirement] is easy to misread, since any competently crafted class complaint literally raises common "questions." For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same pro-vision of law. Title VII, for example, can be violated in many ways -- by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention -- for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke.  What matters to class certification . . . is not the raising of common "questions" -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Dukes, 131 S. Ct. at 2551.

While the parties contend that the holding in Dukes is limited to its facts and is distinguishable from this case, "this argument misconstrues the role of Supreme Court precedent in our three tier system of federal jurisprudence." United States v. Powell, 109 F. Supp. 2d 381, 383-84 (E.D. Pa. 2000)(Robreno, J.). This Court has previously recognized that "under this system, lower courts are obligated to follow both the narrow holding announced by the Supreme Court as well as the rule applied by the Court in reaching its holding." Id. (citing Casey v. Planned Parenthood, 14 F.3d 848, 856-57 (3d Cir. 1994) (examining role of Supreme Court precedent); Loftus v. SEPTA, 843 F. Supp. 981, 984 (E.D. Pa. 1994)(same); Piazza v. Major League Baseball, 831 F. Supp. 420, 437-38 (E.D. Pa. 1993)).

Indeed, "our system of precedent or stare decisis is . . . based on adherence to both the reasoning and result of a case, and not simply the result alone." Casey, 947 F.2d at 692, aff'd in part and rev'd in part on other grounds, 505 U.S. 833 (1992).  "If the rule were otherwise, the Supreme Court's 'limited docket' would limit the Court's authority only to the

- 14 -

'handful of cases that reached it.'" <u>Powell</u>, 109 F. Supp. 2d at

383-84 (E.D. Pa. 2000) (quoting <u>Casey</u>, 947 F.2d at 691.

Therefore, in this case, the Court is bound to apply both the

narrow holdings of <u>Dukes</u> as well as the reasoning, analysis, and

legal rules applied in reaching its result.  <u>See</u> <u>Powell</u>, 109 F.

Supp. 2d at 383-84 (E.D. Pa. 2000) (citing <u>Casey</u>, 947 F.2d at

691).

Here, in undertaking the rigorous analysis required by

Rule 23 and in applying the reasoning, analysis, and legal rules

found in <u>Dukes</u>, the Court finds that the proposed class of

Plaintiffs does not satisfy the commonality requirement.[6]

Although the plaintiffs in <u>Dukes</u> were bringing employment

discrimination claims under Title VII and Plaintiffs in this case

bring discriminatory lending claims under the FHA and ECOA, both

groups rely on the disparate impact theory to show that the

---

[6]    In determining typicality, the Third 23(a) requirement,
the Court must examine whether "the named plaintiff's individual
circumstances are markedly different or . . . the legal theory
upon which the claims are based differs from that upon which the
claims of other class members will perforce be based."  Eisenberg
v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985).  Typicality permits
"the court to assess whether the class representatives themselves
present those common issues of law and fact that justify class
treatment . . . ."  Id.  As is often the case, the typicality
requirement in Rule 23(a) is likely not satisfied for the same
reason the commonality requirement is not satisfied.  See In re
Community Bank, 418 F.3d at 303 ("'The concepts of commonality
and typicality are broadly defined and tend to merge.'" (quoting
Baby Neil ex rel. Kanter v. Casey, 43 F.3d 48, 56 (3d Cir.
1994)).

defendants' policy of granting discretion to decisionmakers resulted in discrimination.

Plaintiffs do not satisfy the commonality requirement simply because the dispositive legal issue of whether Defendants' discretionary pricing policy constituted a common practice that affected class members in a discriminatory manner is the same for each member of the class.  In Dukes, the Supreme Court did not find the common question of whether Wal-Mart's policy of giving discretion to managers in pay and promotion decisions that resulted in a disparate impact to be enough, but instead found that the common question required would have to be narrowed to each supervisor.  In this case, there were many loan officers that were involved in using discretion that created the alleged discrimination.  Applying Dukes, Plaintiffs would likely have to show the disparate impact and analysis for each loan officer or at a minimum each group of loan officers working for a specific supervisor.  Indeed, the Supreme Court found the fact that it was entirely possible that some supervisors engaged in discrimination while others did not to show that plaintiffs were "unable to show" that each plaintiff's claims "will in fact depend on the answers to common questions."  Dukes, 131 S. Ct. at 2554.

The parties' argue that this case is unlike Dukes because the regression analysis here eliminated the possibility that discretion was exercised based on appropriate, credit-

related considerations.  However, even if assumed, the regression analysis only removes credit-related factors contemplated by the parties and not the loan officers.  Further, even if the Court assumes the regression analysis removes all credit related reasoning, there may be non-credit related reasoning that individual loan officers contemplated that is not based on race. Thus, despite the regression analysis alleging an overall disparate impact, the fact that each loan officer would likely proffer different reasoning for how she applied her discretion to loan applications further supports the conclusion that the issues involved in the case will differ based on which loan officer each Plaintiff received her loan from.  This also comports with the Supreme Court's finding in Dukes that "even if [the statistical proof] established . . . a pattern . . . in all of Wal-Mart's 3,400 stores, that would still not demonstrate that commonality of issues exist" because "[s]ome managers will claim that . . . their stores' area does not mirror the national or regional statistics," to which they were compared to in the statistical analysis to show disparate results, and that "almost all of them will claim to have been applying some [non-discriminatory] criteria whose nature and effects will differ from store to store."  Dukes, 131 S. Ct. at 2555.

     Thus, the Court finds that Plaintiffs proposed class fails to meet the requirement of Rule 23(a) and thus fails to

show that the class could be certified.[7]

III. CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' Motion for Final Approval of Settlement and Certification of Settlement Class, as well as Plaintiffs' Motion for Attorneys Fees.  An appropriate Order will follow.

---

[7]     Another court in the Northern District of California has also found that plaintiffs' proposed class failed to meet the commonality requirement as prescribed in Dukes when presented with almost identical facts, brought under the same statutes, and raising the same legal theory.  See In re Wells Fargo Residential Mortgage Lending Discrimination Litigation, Civ. No. 08-01930 (N.D. Ca. September 6, 2011).